UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Tammy Kathleen Ernst,

                              Plaintiff,

        v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

18-CV-1403 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 5, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 11.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Of the various issues that plaintiff has raised, the evaluation of potential fibromyalgia draws the Court's immediate attention. The Social Security Administration issued a ruling in 2012 that gives ALJs detailed guidance for evaluating fibromyalgia as a medically determinable impairment. *See generally* Titles II & XVI: Evaluation of Fibromyalgia, SSR 12-2P, 2012 WL 3104869 (July 25, 2012). SSR 12-2p emphasizes the importance of basing any determination on established evidence. "A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* at *2. The ruling then lays out two evidentiary paths that a claimant can take to provide the necessary medical evidence of fibromyalgia. The first path is a combination of widespread pain persisting for at least three months; at least 11 of 18 listed bilateral tender points; and exclusion of other disorders that could cause the same symptoms or signs. *Id.* at *3. The second path is a combination of widespread pain persisting for at least three months; repeated manifestations of six or more indicia of fibromyalgia, as guided by non-exhaustive lists in footnotes to the ruling; and exclusion of other disorders that could cause the same symptoms or signs. *Id.*

Here, the Court is concerned that the record was not fully developed and that the existing record was not fully considered. With respect to development of the record, the Court does not see anywhere in the available record where any of plaintiff's physicians conducted the testing or examinations necessary to reach a formal diagnosis of fibromyalgia. Yet a clinical note from January 27, 2015 contains some information that would be part of a formal diagnosis and then proceeds to a

discussion of a treatment plan for fibromyalgia, as if the necessary clinical findings had been made at some point. [336.] A determination of tender points definitely does not appear in the record and would appear to exclude the first evidentiary path, unless other clinical records exist that had not been obtained. At the same time, regardless of any formal diagnosis, the record contains clinical findings of at least some of the indicia under the second evidentiary path. For example, the record contains mentions of diarrhea [253, 286]; abdominal pain and cramps [292]; vomiting and flank pain [302]; persistent quadrant pain balanced, for purposes of differential diagnosis, against possible issues with ovarian cysts and an intrauterine device [320]; panic attacks [332]; migraine headaches [335]; and body wide pain with "brain fog" [344]; among other clinical notations. The clinical notations in the record compare with the non-exhaustive footnotes in SSR 12-2p as follows:

> [FN 9] Symptoms and signs that may be considered include the "(s)omatic symptoms" referred to in Table No. 4, "Fibromyalgia diagnostic criteria," in the 2010 ACR Preliminary Diagnostic Criteria. We consider some of the "somatic symptoms" listed in Table No. 4 to be "signs" under 20 CFR 404.1528(b) and 416.928(b). These "somatic symptoms" include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.
>
> [FN 10] Some co-occurring conditions that may be considered are referred to in Table No. 4, "Fibromyalgia diagnostic criteria," in the 2010 ACR Preliminary Diagnostic Criteria as "somatic symptoms," such as irritable bowel syndrome or depression. Other co-occurring conditions, which are not listed in Table No. 4, may also be considered, such as anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome.

SSR 12-2p, 2012 WL 3104869, at *3 n. 9, 10. As can be seen above, placing the clinical findings from the record side-by-side with the footnotes from SSR 12-2p reveals at least some overlap meriting further consideration. Nonetheless, no analysis of the overlap appears in the ALJ's

decision. The ALJ dispenses with SSR 12-2p in four short sentences: "The Social Security Administration follows strict guidelines in determining whether fibromyalgia is a severe impairment. SSR 12-2p sets out these guidelines. In reviewing these guidelines, the claimant's fibromyalgia treatment does not meet these guidelines. Therefore, for purposes of this decision only, I have determined that the claimant does not meet these guidelines." [24.] *Cf. Bush v. Comm'r*, No. 3:17-CV-333, 2019 WL 1449739, at *4 (S.D. Ohio Apr. 2, 2019) ("The record here contains a number of such documented symptoms including, *inter alia*, fatigue and/or tiredness, memory problems, nervousness and/or anxiety, chest pain, depression, headaches, and vomiting. Despite such records, and despite Plaintiff's recent treatment for, and recorded diagnosis of, fibromyalgia, the ALJ made no findings concerning whether Plaintiff's alleged fibromyalgia was a medically determinable impairment at Step Two of the sequential analysis."), *report and recommendation adopted*, No. 3:17-CV-333, 2019 WL 1767392 (S.D. Ohio Apr. 22, 2019); *Pittman v. Comm'r*, No. 4:16-CV-18, 2017 WL 3836100, at *6 (W.D. Va. Aug. 15, 2017) ("Specifically, the ALJ's analysis of Pittman's fibromyalgia should be undertaken in accordance with SSR 12-2p, 2012 WL 3104869 (July 25, 2012), and her migraine headaches should be evaluated under the proper standard.") (citation omitted), *report and recommendation adopted*, No. 4:16-CV-00018, 2017 WL 3821689 (W.D. Va. Aug. 31, 2017); *Howard v. Colvin*, No. 214CV01211GMNGWF, 2016 WL 11184144, at *13 (D. Nev. Mar. 16, 2016) ("Thus, the ALJ's reliance [on Plaintiff's] lack of symptoms consistent with fibromyalgia is unpersuasive because he failed to consider all of Plaintiff's complaints and symptoms as reported in her medical records."), *report and recommendation adopted sub nom. Howard v. Berryhill*, No. 214CV01211GMNGWF, 2017 WL 4881589 (D. Nev. Oct. 30, 2017).

Further consideration of SSR 12-2p will be necessary. Plaintiff of course bears the ultimate burden through the first four steps of the disability analysis, and if findings of tender points or other

clinical notes have not been obtained yet then plaintiff would benefit from working with the Commissioner to help the Commissioner fulfill the agency's duty to develop the record.  Even with the existing record, however, a more detailed analysis of the overlap cited above will help the Commissioner and the Court determine where the substantial evidence lies.  In ordering remand, the Court takes no position on what conclusion the ALJ should make after conducting a more detailed analysis of SSR 12-2p.  The Court also declines at this time to address any other issues that the parties have raised.  Upon remand, the Commissioner is free to address any other issues as might be appropriate.

### III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 11).  The Court grants plaintiff's cross-motion (Dkt. No. 10) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order.  The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: March 13, 2020